**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

ALEMAYEHU GETACHEW,

    Plaintiff,

vs.

WEST SIDE TRANSPORT, INC.,

    Defendant.

13-CV-97-LRR

**ORDER**

_____

**TABLE OF CONTENTS**

*I.   INTRODUCTION.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*II.  PROCEDURAL HISTORY..* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*III. SUBJECT MATTER JURISDICTION.* . . . . . . . . . . . . . . . . . . . . . . . . *2*

*IV. STANDARD OF REVIEW.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*

*V.  FACTUAL BACKGROUND.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*
    *A.   Parties..* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*
    *B.   Overview of the Dispute.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*

*VI. ANALYSIS.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *5*
    *A.   42 U.S.C. § 1981 Discrimination Claim.* . . . . . . . . . . . . . . . . . . . *5*
        *1.   Parties' arguments.* . . . . . . . . . . . . . . . . . . . . . . . . . . . *5*
        *2.   Applicable law.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . *6*
        *3.   Application.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *6*
    *B.   42 U.S.C. § 1981 Retaliation Claim.* . . . . . . . . . . . . . . . . . . . . *7*
        *1.   Parties' arguments.* . . . . . . . . . . . . . . . . . . . . . . . . . . . *7*
        *2.   Applicable law.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . *7*
        *3.   Application.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *8*
    *C.   Thirteenth Amendment Claim.* . . . . . . . . . . . . . . . . . . . . . . . . *8*
        *1.   Parties' arguments.* . . . . . . . . . . . . . . . . . . . . . . . . . . . *8*
        *2.   Applicable law.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . *9*
        *3.   Application.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *9*
    *D.   State Law Claims..* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *10*
        *1.   Wrongful discharge in violation of state law..* . . . . . . . . . . . *10*
            *a.   Parties' arguments..* . . . . . . . . . . . . . . . . . . . . . *10*

|   |   | b. | Applicable law............................. | 11 |
|   |   | c. | Application................................ | 13 |
|   | 2. | *Intentional misrepresentation*............... | | 14 |
|   |   | a. | *Parties' arguments*......................... | 14 |
|   |   | b. | *Applicable law*.............................. | 15 |
|   |   | c. | *Application*................................ | 15 |

VII. CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## I. INTRODUCTION

The matter before the court is Defendant West Side Transport, Inc.'s ("West Side") Motion to Dismiss ("Motion") (docket no. 5).

## II. PROCEDURAL HISTORY

On September 25, 2013, Plaintiff Alemayehu Getachew filed a pro se complaint ("Complaint") (docket no. 3) alleging that West Side: discriminated against him by terminating his employment in violation of 42 U.S.C. § 1981 (Count I); retaliated against him for complying with federal regulations and complaining about his pay in violation of 42 U.S.C. § 1981 (Count II); wrongfully discharged him in violation of Iowa law (Count III); intentionally misrepresented what Getachew would be paid while working for West Side (Count IV); and violated Getachew's rights under the Thirteenth Amendment to the United States Constitution (Count V). On October 29, 2013, West Side filed the Motion arguing that the court should dismiss each claim in Getachew's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). On November 13, 2013, Getachew filed his Resistance (docket no. 6). The Motion is fully submitted and ready for decision.

## III. SUBJECT MATTER JURISDICTION

The court has federal question jurisdiction over Getachew's claims in Counts I and II of the Complaint because they arise under 42 U.S.C. § 1981. The court also has federal question jurisdiction over Count V because it arises under the United States Constitution. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). The court

has diversity jurisdiction over Counts III and IV because Getachew is an Ohio resident, West Side is an Iowa corporation and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332 ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different States . . . .").

## IV. STANDARD OF REVIEW

A pro se complaint must be liberally construed. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Smith v. St. Bernards Reg'l Med. Ctr.*, 19 F.3d 1254, 1255 (8th Cir. 1994). In addition, unless the facts alleged are clearly baseless, they must be weighed in favor of the plaintiff. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992). A court, however, can dismiss at any time a complaint filed in forma pauperis if the complaint is frivolous, malicious, fails to state a claim on which relief may be granted or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2); 28 U.S.C. § 1915A(b)(1). A claim is "frivolous" if it "lacks an arguable basis in either law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *accord Cokeley v. Endell*, 27 F.3d 331, 332 (8th Cir. 1994). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Accordingly, a court may review the complaint and dismiss sua sponte those claims that fail "to raise a right to relief above the speculative level," *Parkhurst v. Tabor*, 569 F.3d 861, 865 (8th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted), or that are premised on meritless legal theories or clearly lack any factual basis, *Neitzke*, 490 U.S. at 325. *See, e.g., Denton*, 504 U.S. at 27 (considering frivolousness); *Myers v. Vogal*, 960 F.2d 750, 751 (8th Cir. 1992) (concluding that a district court may dismiss an action if an affirmative defense exists).

3

Although a plaintiff need not provide "detailed" facts in support of its allegations, *id.* (quoting *Twombly*, 550 U.S. at 555), the "short and plain statement" requirement of Federal Rule of Civil Procedure 8(a)(2) "demands more than an unadorned" accusation of harm, *id.*; *see also Erickson v. Pardus*, 551 U.S. 89, 93 (2007) ("Specific facts are not necessary [under Rule 8(a)(2)]."). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Where the allegations show on the face of the complaint [that] there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate." *Benton v. Merrill Lynch & Co.*, 524 F.3d 866, 870 (8th Cir. 2008).

### V. FACTUAL BACKGROUND

Viewed in the light most favorable to Getachew, the facts are as follows:

#### A. Parties

Getachew is a citizen of Columbus, Ohio who began working for West Side as a truck driver sometime before October 2012.

West Side is an Iowa corporation with its principal place of business in Cedar Rapids, Iowa. West Side operates a fleet of over 600 trucks and 1500 trailers throughout the United States.

#### B. Overview of the Dispute

West Side hired Getachew to work as a truck driver for the company sometime before October 2012.[1] On October 3, 2012, Getachew began to drive a load from Keokuk, Iowa to Roanoke, Indiana. On October 4, 2012, Getachew was late for a scheduled delivery. Later that day, an employee from West Side called Getachew and said, "Come on to my office and we will talk like men to men." Complaint at 3. As Getachew was on

---

[1] Although it is not clear in the Complaint, it appears that Getachew completed training to become a driver in October 2011 and that West Side hired him shortly thereafter.

4

his way back to Iowa, Frank Gambish, West Side's general manager, instructed Ryan Armstrong, Getachew's supervisor, to prepare three allegedly unfounded warnings for Getachew and his termination papers. When Getachew arrived at the office, Gambish told him to sign the documents, which terminated his employment. Gambish told Getachew that the reason West Side was terminating him was because he had been late for the delivery on October 4, 2012.

On October 25, 2012, West Side and Getachew had a hearing at the Iowa Workforce Development office. At the hearing, West Side's human resources manager, Amy Jordan, allegedly testified that West Side had not given Getachew any warnings, in writing or verbally, prior to his termination on October 5, 2012. Jordan also allegedly testified that it was common practice for West Side to force their drivers to sign three warning documents at once in exchange for West Side agreeing not to revile their dock reports.[2]

## VI. ANALYSIS

### A. 42 U.S.C. § 1981 Discrimination Claim

#### 1. Parties' arguments

West Side argues that the court should dismiss Getachew's § 1981 discrimination claim because he failed to allege any facts that showed he was a member of a protected class or that the circumstances of his termination give rise to an inference of racial discrimination.

Getachew argues that the court should not dismiss his § 1981 discrimination claim because he alleges that West Side discriminated against him when it discharged him on account of his race.

---

[2] A dock report is a record of a driver's activity while driving inside a compound. Employers consider dock reports when deciding whether to hire applicants.

5

*2. Applicable law*

Section 1981 provides that "[a]ll persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). Pursuant to subsection (b), "the term 'make and enforce contracts' includes the . . . termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." § 1981(b). In summary, § 1981 "affords a federal remedy against discrimination in private employment on the basis of race." *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 460 (1975).

Section 1981 claims are analyzed under the same framework as Title VII employment discrimination claims. *See Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 873 n.2 (8th Cir. 2010) (citing *Gordon v. Shafer Contracting Co.*, 469 F.3d 1191, 1196 (8th Cir. 2006)). To establish a prima facie case of discrimination under § 1981 a plaintiff must show: "(1) he is a member of a protected class, (2) he met his employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination." *Id.* at 874.

*3. Application*

In this case, Getachew has not made any factual allegations of racial discrimination in his Complaint. In fact, the only allegation he puts forth is that an employee from West Side called Getachew on October 4, 2012 and told him to "[c]ome on to my office and we will talk like men to men," Complaint at 3, which on its face is a racially neutral statement. The Complaint is bereft of any facts or circumstances whatsoever that give rise to an inference of discrimination, the fourth element required to establish a prima facie case of discrimination under § 1981. Therefore, Getachew fails to allege enough facts to support his claim that West Side violated his right to contract in violation of § 1981 and, therefore, his claim fails. *See Twombly*, 550 U.S. at 570. Accordingly, the court shall

6

grant the Motion to the extent that it requests that the court dismiss Getachew's § 1981 discrimination claim.

## B. 42 U.S.C. § 1981 Retaliation Claim

### 1. Parties' arguments

West Side argues that the court should dismiss Getachew's § 1981 retaliation claim because he did not allege that he engaged in a protected activity in the context of § 1981.

Getachew alleges that West Side retaliated against him by discharging him for engaging in the protected activities of complying with federal driving-hour regulations, which is his reason for being late to his delivery, and complaining about reduced pay.

### 2. Applicable law

A retaliation claim under § 1981 has the following elements: (1) the employee "engaged in a statutorily protected activity; (2) an adverse employment action was taken against him or her; and (3) a causal connection exists between the two events." *Gilooly v. Mo. Dept. of Health & Senior Servs.*, 421 F.3d 734, 739 (8th Cir. 2005).

The meaning of a "statutorily protected activity" in the context of § 1981 is conduct protected by Title VII. *Sayger v. Riceland Foods, Inc.*, Nos. 12-3301, 12-3395, 2013 WL 6050746, at *4 (8th Cir. Nov. 13, 2013); *see also Wright v. St. Vincent Health Sys.*, 730 F.3d 732, 737 (8th Cir. 2013) ("Though each statute provides 'separate, distinct, and independent' remedies for unlawful retaliation, . . . the elements of . . . Title VII and 42 U.S.C. § 1981 retaliation claims 'are identical.'" (quoting *Johnson*, 421 U.S. at 661 and *Kim v. Nash Finch Co.*, 123 F.3d 1046, 1063 (8th Cir. 1997))). A protected activity "can be either opposing an act of discrimination made unlawful by Title VII ('the opposition clause'), or participating in an investigation under Title VII ('the participation clause')." *Hunt v. Neb. Pub. Power Dist.*, 282 F.3d 1021, 1028 (8th Cir. 2002). Title VII makes it unlawful for employers to discriminate based on race, color, religion, sex, or national origin. *See Brower v. Runyon*, 178 F.3d 1002, 1005 (8th Cir. 1999).

7

### *3.	Application*

While Getachew alleges that West Side discharged him after engaging in a protected activity, his Complaint makes no factual allegations that support that he engaged in a protected activity as defined by Title VII. Specifically, Getachew neither makes factual allegations that he opposed an act of unlawful discrimination before West Side discharged him (the opposition clause) nor makes any factual allegations that West Side discharged him because he participated in an investigation under Title VII (the participation clause). *See Hunt*, 282 F.3d at 1028. Since the Complaint lacks any factual allegations that Getachew engaged in a protected activity, Getachew's retaliation claim fails. *Cf. id.* at 1028-29 (finding that the district court properly dismissed the plaintiff's Title VII retaliation claim when she failed to attribute an adverse employment action to unlawful sex discrimination). Accordingly, the court shall grant the Motion to the extent that it requests that the court dismiss Getachew's § 1981 retaliation claim.

### C. Thirteenth Amendment Claim

### *1.	Parties' arguments*

West Side argues that the court should dismiss Getachew's Thirteenth Amendment claim because the Thirteenth Amendment does not give rise to an independent cause of action. Moreover, West Side states that since the only statute on which Getachew relies to enforce the Thirteenth Amendment has already been asserted, his claim should be dismissed.

Getachew asserts that West Side violated his Thirteenth Amendment right and relies on § 1981 as his mechanism to enforce the Thirteenth Amendment. Getachew claims that when an employee from West Side said, "Come on to my office and we will talk like men to men," it indicated that employee's racial superiority and undermined Getachew's national origin status, thus infringing on his Thirteenth Amendment rights.

*2. Applicable law*

The Thirteenth Amendment states:

> Section 1. Neither slavery nor involuntary servitude, except as punishment for crime whereof the party shall have been duly convicted, shall exist with the United States, or any place subject to their jurisdiction.
> Section 2. Congress shall have the power to enforce this article by appropriate legislation.

U.S. Const. amend. XIII. Congress, under Section Two of the Thirteenth Amendment, has the power "rationally to determine what are the badges and incidents of slavery, and the authority to translate that determination into effective legislation." *Jones v. Alfred H. Mayer Co.*, 392 U.S. 400, 440 (1968). In fact, Congress can reach "purely private action" under the authority of the Thirteenth Amendment. *U.S. v. Bledsoe*, 728 F.2d 1094, 1097 (8th Cir. 1984) (citing *Jones*, 392 U.S. at 438-39). However, the Thirteenth Amendment is not self-enforcing, and Congress must effectuate its provisions with specific legislation, as authorized in Section 2. *See, e.g.*, *Sanders v. A.J. Canfield Co.*, 635 F. Supp. 85, 87 (N.D. Ill. 1986) ("There is no direct private cause of action under the Thirteenth Amendment. Plaintiffs, instead, must resort to statutory remedies created by Congress under the power granted to it by that amendment.").

*3. Application*

To state a Thirteenth Amendment claim, Getachew must rely on a statute that enforces the provisions of the Thirteenth Amendment. The only statute on which Getachew relies to enforce the Thirteenth Amendment is § 1981. However, the court has already concluded that Getachew does not state a claim for relief under § 1981 and the court is not aware of any other statute which could serve as a basis for Getachew's § 1981 claim. Therefore, Getachew's Thirteenth Amendment claim also fails. Accordingly, the court shall grant the Motion to the extent that it requests that the court dismiss Getachew's Thirteenth Amendment claim.

### D. State Law Claims

Getachew's remaining claims are state law claims. Getachew alleges that West Side wrongfully discharged Getachew in violation of Iowa law (Count III) and that West Side intentionally misrepresented how much Getachew would be paid (Count IV).

### 1. *Wrongful discharge in violation of state law*

#### a. *Parties' arguments*

West Side argues that the court should dismiss Getachew's wrongful discharge claim. West Side asserts that the employment relationship between it and Getachew was an at-will employment relationship and that Getachew failed to identify a clear public policy against discharging Getachew that can overcome the nature of an at-will employment relationship. With regard to Getachew's reference to the federal driving-hours regulation, West Side states that Getachew has failed to identify the federal rule that limits driving hours. West Side argues that even if Getachew did identify the applicable regulation, "[t]here is no authority holding that Iowa's public policy exception to the at-will employment doctrine can be supported by federal regulations." Brief in Support of the Motion (docket no. 5-1) at 7. West Side also argues that the applicable federal regulation has an enforcement provision that Getachew did not exercise and, therefore, the public policy exception does not apply.

Getachew argues that West Side wrongfully discharged Getachew in violation of Iowa law. Getachew asserts that "employment is a contractual relationship," which implies an "obligation of good faith and fair dealing." Complaint ¶ 31. Specifically, Getachew states that West Side never issued a written or verbal warning to him prior to his determination and that it wrongfully discharged him for being late when he was late because he was following a federal regulation.

### b. Applicable law

In Iowa, employment relationships are generally considered to be at-will absent a valid contract of employment. *Fitzgerald v. Salsbury Chem., Inc.*, 613 N.W.2d 275, 280 (Iowa 2000). An at-will employment relationship means that the relationship can be terminated "by either party 'at any time, for any reason, or no reason at all.'" *Id.* (quoting *Phipps v. IASD Health Servs. Corp.*, 558 N.W.2d 198, 202 (Iowa 1997)). However, Iowa courts have developed two exceptions to this doctrine.[3] *Id.* One exception is the public policy exception. *Id.* To state a claim under the public policy exception, a plaintiff is required to establish: "(1) The existence of a clearly defined public policy that protects an activity[;] (2) [t]his policy would be undermined by a discharge from employment[;] (3) [t]he challenged discharge was the result of participating in the protected activity[; and] (4) [t]here was lack of other justification for the termination." *Lloyd v. Drake Univ.*, 686 N.W.2d 225, 228 (Iowa 2004) (formatting omitted).

Whether a clearly defined public policy protects an activity is a matter of law for the court to resolve. *Id.* at 229. When deciding whether to establish a public policy exception to the at-will employment doctrine, courts are to "only extend such recognition to those policies that are well recognized and clearly defined." *Davis v. Horton*, 661 N.W.2d 533, 536 (Iowa 2003). As a general rule, public policy exceptions must be "weighty enough 'to overcome the employer's interest in operating its business in the

---

[3] Getachew has not made any factual allegations that West Side violated the second exception, which is for "discharges in violation of employee handbooks which constitute a unilateral contract." *Id.* at 281. Therefore, Getachew's only potential avenue of recovery based on wrongful discharge is the public policy exception.

Notably, Iowa courts "have consistently *refused* to adopt a covenant of good faith and fair dealing with respect to at-will employment relationships." *Id.* at 280 (emphasis added). Therefore, to the extent that Getachew argues that he is entitled to relief on Count IV due to an alleged breach of the "obligation of good faith and fair dealing," Getachew has failed to state a claim upon which relief may be granted.

11

manner it sees fit,' which [Iowa courts] have long and vigorously protected." *Lloyd*, 686 N.W.2d at 229 (quoting *Fitzgerald*, 613 N.W.2d at 282). Although Iowa courts have typically looked to statutes to establish public policy exceptions, the Iowa Supreme Court has acknowledged that state "administrative regulations may be used as an additional source of public policy to support the tort of wrongful discharge" if they "state a clear and well-defined public policy that protects an activity in the same way as a statute" and relate to "public health, safety, or welfare." *Jasper v. H. Nizam, Inc.*, 764 N.W.2d 751, 763-64 (Iowa 2009). However, the court is not aware of any case in which the Iowa Supreme Court, or any other Iowa court, has recognized a federal regulation as a source of a public policy exception, and Getachew has not alerted the court to any such case.

The federal regulation addressing driving hours for property-carrying commercial vehicles is 49 C.F.R. § 395.3. Pursuant to that regulation, "A driver may drive only during a period of 14 consecutive hours after coming on duty following 10 consecutive hours off duty. . . . A driver may drive a total of 11 hours during [such] 14-hour drive period . . . ." 49 C.F.R. 395.3(a). Pursuant to 49 U.S.C. § 31105, "A person may not discharge an employee . . . because . . . the employee refuses to operate a vehicle because . . . the operation violates a regulation . . . of the United States related to commercial motor vehicle safety [or] health . . . ." 49 U.S.C. § 31105(a). If an employee is discharged in violation of § 31105, the employee "may file a complaint with the Secretary of Labor not later than 180 days after the alleged violation occurred." 49 U.S.C. § 31105(b). If the Secretary of Labor does not make a decision within 210 days after the complaint is filed or if the decision adversely affects the employee, the employee may seek review in United States district courts (if no decision is rendered) or the United States circuit courts of appeals (if the decision adversely affects the employee). 49 U.S.C. § 31105(c)-(d).

### c. *Application*

Getachew has not made any factual allegations that his employment relationship was subject to a valid employment contract. Therefore, the court finds that Getachew and West Side's employment relationship was at-will. Accordingly, Getachew is required to put forth a clear public policy that overcomes the general rule that at-will employees can be terminated "at any time, for any reason, or no reason at all." *Phipps*, 558 N.W.2d at 202.

The court finds that there is no public policy exception to the nature of Getachew's at-will employment relationship with West Side based on a federal regulation when the federal regulation at issue provides a detailed statutory procedure by which an aggrieved employee can seek relief. *See Hamilton v. First Baptist Elderly Hous. Found.*, 436 N.W.2d 336, 431 (Iowa 1989) (holding that Iowa Code chapter 601A, Iowa's civil rights statute, "preempts independent common law actions also premised on discrimination" and dismissed the plaintiff's action for wrongful discharge in violation of public policy because it amounted to "a second bite of the apple").

Here, federal law provided a procedure by which Getachew should have sought relief. First, Getachew should have filed a complaint with the Secretary of Labor within 180 days after the alleged violation occurred. 49 U.S.C. § 31105. If the Secretary of Labor did not provide relief, Getachew could *then* seek relief in either the federal district or appellate courts. Getachew already had an administrative remedy, and an additional remedy pursuant to Iowa state law would simply offer another bite at the apple. Thus, the concern that drivers may be discharged for complying with federal regulations is not "weighty enough 'to overcome the employer's interest in operating its business in the manner it sees fit,' which [Iowa courts] have long and vigorously protected." *Lloyd*, 686 N.W.2d at 229 (quoting *Fitzgerald*, 613 N.W.2d at 282); *see also Kornischuk v. Con-Way Cent. Express*, No. Civ 1-03-CV-10013, 2003 WL 21977202 (N.D. Iowa June 4, 2003) ("[T]his Court finds that because a detailed statutory procedure exists by which an

aggrieved employee may administratively enforce the public policy embodied in [the federal regulation], he may not now pursue a common law wrongful discharge claim based on the same policy."). Accordingly, the court shall grant the Motion to the extent that it requests that the court dismiss Getachew's claim that he was wrongfully discharged in violation of Iowa law because he was following a federal regulation.

With regard to Getachew's claim that West Side discharged him without giving him any warnings, the court finds that Getachew's claim is without merit. Getachew has not alleged that his employment was subject to conditions outlined in an employment manual, another exception to the at-will employment doctrine. Moreover, the court is not aware of any case in which the Iowa Supreme Court, or any other Iowa court, has recognized internal company policy as a source of a public policy exception, and Getachew has not alerted the court to any such case. *Cf. Anderson v. Douglas & Lomason Co.*, 540 N.W.2d 277, 282-89 (Iowa 1995) (rejecting an employee's argument that an employer wrongfully discharged him because the employer failed to follow procedures outlined in an employee handbook since there is no duty to follow disciplinary procedures outlined in an employee handbook unless the handbook constitutes a unilateral offer). Accordingly, the court shall grant the Motion to the extent that it requests that the court dismiss Getachew's claim that West Side wrongfully discharged him because it did not give him sufficient warnings.

### 2. *Intentional misrepresentation*
#### a. *Parties' arguments*

West Side argues that the court should dismiss Getachew's intentional representation claim because Getachew failed to meet the "heightened pleading requirements under the Federal Rules of Civil Procedure." Brief in Support of Motion at 8. Specifically, West Side argues that Getachew failed to "identify with any specificity the statements he contends were false, who made the statements, when and where they were made or why the statements were fraudulent." *Id.*

Getachew argues that West Side intentionally misrepresented what he would be paid. Getachew states that he "relied on these false representations . . . pay by mile . . . then pay by zip code" by "decid[ing] to accept [West Side's] job offer[,] passing up other employment opportunities." Complaint at 10. Getachew claims that West Side "intentionally deceived" him when it underpaid him "in violation of the agreed payment term" and claims that West Side "is responsible for [i]ntentional misrepresentation." *Id.*

### b. *Applicable law*

Federal Rule of Civil Procedure 9(b) requires that "a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). A pleading alleging fraud must contain "a higher degree of notice, enabling the defendant to respond specifically, at an early stage of the case, to potentially damaging allegations of immoral and criminal conduct." *Schaller Tel. Co. v. Golden Sky Sys., Inc.*, 298 F.3d 736, 746 (8th Cir. 2002) (quoting *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 920 (8th Cir. 2001)) (internal quotation marks omitted). Circumstances constituting fraud "include such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *Bennett v. Berg*, 685 F.2d 1053, 1062 (8th Cir. 1982). If a plaintiff fails to plead with particularity a claim of fraud, a court may dismiss the claim for failing to state a claim under Rule 12(b)(6). *See Freitas v. Wells Fargo Home Mortg., Inc.*, 703 F.3d 436, 440 (8th Cir. 2013)

### c. *Application*

As an initial matter, the court notes that a pro se complaint must be liberally construed. *See Hughes*, 449 U.S. at 9. However, because Getachew's Complaint is so lacking in any particularized factual allegations—including what exactly Getachew was told he would be paid and what he was actually paid, who said these things, when they were

15

said and where they were said—the court finds that, even after liberally construing the Complaint, Getachew fails to meet the particularized pleading requirements of Federal Rule of Civil Procedure 9(b). Getachew had all the information necessary to allege a fraud claim under Iowa law with sufficient particularity, and he even had an opportunity to clarify the record in his Resistance. *See Freitas*, 703 F.3d at 440 (declining to relax federal pleading standards when the plaintiff "possessed information that would have enabled them to 'state with particularity' the circumstances of [the defendant's] representations as Rule 9(b) requires"). However, in light of Getachew's failure to make even the most basic particularized factual allegations, the court shall grant the Motion to the extent that it requests the court to dismiss Getachew's intentional misrepresentation claim for failure to state a claim on which relief may be granted.

## VII. CONCLUSION

In light of the foregoing, the Motion (docket no. 5) is **GRANTED**. The Clerk of Court is **DIRECTED** to enter judgment in favor of West Side.

**IT IS SO ORDERED.**

**DATED** this 29th day of November, 2013.

_____
LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA